## Union Central Life Insurance Company v. Jackson.

(Decided June 23, 1922.)

### Appeal from Whitley Circuit Court

1. Evidence—Proof of Negative—Burden of Proof.—The general rule is that where a negative is essential to the existence of a right the party claiming the right has the burden of proving such negative and mere difficulty or inconvenience in producing such proof will not relieve against the rule. However, the burden may be discharged by even slight circumstances from which a presumption of fact would arise which if true would establish the negative. If, however, the opposing party possesses plenary power to produce the proof of the fact and the case be such that it is quite, if not wholly, impossible for the one possessing the burden to prove it, it then becomes the duty of such opposing party to adduce the proof in his possession.

2. Insurance —Existence of Premium Note—Presumptions.—A statement sent to the insured by the company showing what would be due at the next premium date and containing no statement of an outstanding note for a prior premium would, perhaps, be sufficient to raise the presumption of fact that no such outstanding note existed; but in order to have that effect it must first appear that the statement was either actually sent by the company, or that it was on the usual form of the company which it employed for that purpose and from which it might be inferred that it was so sent by it.

3. Insurance—Automatic Extensions.—Where the language of the policy granting automatic extensions after default expressly withholds them unless prior premiums or notes executed therefor are paid there can be no aliquot part of an extension for a corresponding aliquot part of the payment of the premiums since the payment of the whole of it is required before any extension is given.

4. Insurance—Premiums—Payment—Burden of Proof.—A life insurance policy provided that upon default in the payment of any premium after the payment of the third one, the policy would be automatically extended for a designated period after the full payment of each premium upon condition, however, that the insured was not indebted to the company at the time of making default for any premium or part of a premium, or for any sum for which the

policy was pledged as security. The extension given after the payment of the third premium was 10 years and 66 days and after the payment of the fourth premium it was 15 years and 98 days. Default was made in the payment of the fifth premium and the insured died about 13 years thereafter. In a suit on the policy by the beneficiary it was alleged that there was no outstanding note of the character mentioned at the time of the default which the answer denied, and affirmatively alleged that a note for $10.00 executed in part payment of the fourth premium was never paid, the execution of which the reply admitted but alleged that it was paid. Held, that the burden was on plaintiff to show that the note was paid in order to be entitled to the given extension after the payment of the fourth premium.

MAXWELL & RAMSEY and TYE & SILER for appellant.

HENRY C. GILLIS and B. B. SNYDER for appellee.

Opinion of the Court by Judge Thomas—Reversing.

On March 15, 1903, the appellant and defendant below, Union Central Life Insurance Company, issued a policy on the life of Berry S. Jackson, by which it agreed to pay upon his death to Bertha M. Jackson, the beneficiary therein, who was a sister of the insured, the sum of $1,000.00 upon the conditions therein named, one of which was the payment of the annual premiums of $44.46 as therein stipulated, and under the heading "privileges and guaranties" printed on the back of the policy and as a part of it was the stipulation that, "In case of default in the payment of any premium after three full years' premiums have been paid, provided there be not outstanding or unpaid any note given for a premium or part of a premium, or for a loan upon the security of this policy, no surrender for a paid-up policy having been made as above provided, this policy will be continued in force as a paid-up non-participation term policy for such time only as is named in table 'B' below; if the death of the insured shall occur within three years from the date of such default, and while the aforesaid term policy is in force, there shall be deducted from the amount payable thereunder a sum equal to the regular premiums, with interest, that would have been paid, had the original policy been kept in force." The guaranteed extension in table "B," referred to therein, was after the payment of three full premiums, 10 years and 66 days and after the payment of four premiums it was 15 years and 98 days. The date for the payment of the premiums on

the policy was the 15th of March each year and it is quite conclusively shown that the first three premiums were paid though some notes were executed at the times when they were due for part of them, but so far as this record shows they were paid before any default in the payment of any other premium. When the fourth premium became due on March 15, 1906, there were four notes executed in part payment of it, one due in one month for $10.00, another due in three months for $10.00, another in five months for $10.00 and another due in seven months for $9.65. The only cash paid at that time was the dividend of $4.81 to which the policy was entitled. When the fifth premium became due on March 15, 1907, nothing was done then or at any time thereafter towards paying it.

The insured died on April 26, 1919, twelve years, one month and eleven days after making default, which was beyond the automatic extension allowed following the payment of three years' premiums but within the extension allowed for the payment of four years' premiums. After the death of the insured the beneficiary in the policy, who in the meantime had married, assigned and transferred all her interest in it to the appellee and plaintiff below, Nora Jackson, the surviving widow of the insured, and she filed this action in the Whitley circuit court against defendant to recover the face of the policy and in her petition she set out the above guarantee and alleged that the insured paid in full the first four premiums on the policy and that at the time he made default in the payment of the fifth premium *there was not then outstanding any unpaid note* given for a premium or any part of it, or any executed for a loan upon the security of the policy, and that it had never been surrendered and that under its terms she was entitled to recover. The answer was a general denial of the grounds of recovery and in another paragraph it was alleged, in substance, that the insured partly paid the fourth annual premium with his note for $10.00 executed to the company on the 15th day of June, 1906, and due December 8, thereafter, and that neither he nor any other person had ever paid it or any part of it, and that at the time he made default in the payment of the fifth premium that note was outstanding and unpaid and for that reason, under the express terms of the policy, the automatic extension allowed after the payment of the fourth premium never attached and that the insured having died after the ex-

piration of the extension following the payment of the third annual premium plaintiff was not entitled to recover.

Meeting that defense contained in the answer the reply said: "The plaintiff, Nora Jackson, for reply to the second paragraph of the answer, herein, denies that neither the insured, Berry S. Jackson, nor the beneficiary, under said policy, nor the plaintiff or any other person has not paid the said note or any part to this defendant or any one for it. Denies that at any time, or at all, Berry S. Jackson made default in the payment of each, any or all of the premiums due on said policy after three full years' premiums had been paid or that there was then outstanding and unpaid the *foregoing note so executed* by the insured *for a part of the fourth year's premium* due on said policy." It will thus be seen that plaintiff's pleading admitted the execution of the note relied on by defendant as part payment of the fourth year's premium, although it was dated differently from the premium date of the policy, and affirmatively alleged that it was paid, which in order to obtain the extension contended for must have been done before the default of March 15, 1907.

On the trial plaintiff assumed the burden of proof and introduced the policy and the premium receipts for the first four premiums, showing the last one paid as heretofore indicated, and then introduced a paper dated March 15, 1907, which was found with the policy after insured's death and which was signed by him but not by the defendant, which reads: "Received of the Union Central Life Insurance Company, the dividend declared January 1, 1907, on Policy No. 259634 and applied toward the payment of the annual premium due this day upon said policy." That language was followed by a memoranda showing the amount of the annual premium $44.46, the dividend of $5.66 due on it and the balance due in cash of $38.80. Plaintiff then closed her testimony and defendant declined to introduce any and moved the court for a peremptory instruction in its favor and plaintiff made a similar motion. Without acting on either of them the court with the consent of both parties discharged the jury and later rendered judgment in favor of plaintiff, which it refused to set aside on defendant's motion for a new trial, and the latter has appealed.

The question, very sharply presented, is upon whom rested the burden upon all the issues essential to a recovery under the circumstances and conditions of the case? It will be observed that a condition precedent to the attaching of or the right to any extension of the policy sued on after default in the payment of any premium, was that no note executed for any premium or a part of it or for any other consideration (and to secure which the policy was pledged), should be unpaid and outstanding at the time of the default; and plaintiff recognized such precedent condition by alleging in her petition that no such note was outstanding or unpaid when the default was made, which allegation we are satisfied was necessary to make the petition good. If that allegation had been only denied by the reply there can be no doubt but that the burden of proving it was upon plaintiff as it is an admittedly essential allegation to her recovery. But the answer went further and affirmatively alleged the execution of the note of June 15, 1906, as a part of the fourth premium and that it had not been paid. The reply admitted the execution of that note as part payment of the premium but averred that it was paid before default. It would seem that there can be no doubt but that under the issue thus made the burden was upon plaintiff to prove the payment which is an affirmative and not a negative fact.

Argument of counsel is largely directed, however, to the duties and right of plaintiff under the negative allegation in her petition that there was no outstanding note, as contemplated, at the time of the default in the payment of any premium; or, differently stated, that there was no such outstanding note at the time when the fifth premium became due which, if true, extended the policy for fifteen years and ninety-eight days. That a litigant upon whom rests the burden of proof must introduce *some* testimony supporting an essential negative allegation is well settled. 10 R. C. L. 899; 22 C. J. 80; 16 Cyc. 927-928. And this is true "even as to facts within the knowledge or control of the other side." (Cyc. *supra,* 936.) But, the burden in such cases will be discharged "by proof which renders probable the existence of the negative fact," (22 C. J. 91), such as, circumstances from which the negative allegation may be presumed. If, however, the only evidence by which the necessary and essential negative allegation can be established is chiefly,

if not entirely, within the power of the adverse party to produce it will be the duty of the latter to adduce it although he does not have the general burden of proof in the case. (Cyc. *supra,* 937; C. J. *supra,* 81, and the cases relied on from this court of North Western Mutual Life Ins. Co. v. Calloway, 18 Ky. L. R. 744, and Sun Life Ins. Co. v. Bevan, 19 Ky. L. R. 1246. An instance of the character of case referred to is where the one having the general burden is called upon to prove a negative fact as to his adversary's age. In that case the adversary has complete knowledge concerning the fact which the one upon whom rests the general burden of the whole case does not have, and the exception to the general rule would apply. Another instance is found in the Calloway case, *supra,* where the negative fact to be established related to a mental determination by the defendant and its action relative thereto which could not possibly be proven by plaintiff who had the general burden in the case. In the Bevan case the issue concerned the number of policies solicited by plaintiff, as agent, that had become lapsed. It was held that this fact was so peculiarly within the knowledge of the defendant that it would be required to produce the evidence, notwithstanding the general burden of the entire case was upon plaintiff. It must not be forgotten that the difficulty and inconvenience encountered in discharging the burden will not relieve against it, (Cyc. *supra,* 937), where it is said: "As a matter of principle the difficulty only relieves the party having the burden of evidence from the necessity of creating positive conviction entirely by his own testimony." So that, as we have heretofore seen, slight circumstances from which a presumption of fact will arise will be sufficient in the character of case under consideration to discharge the burden.

In the instant case, if the outstanding note relied on by defendant was in existence its production could have been enforced by a rule against defendant to do so, and it would not have been extremely difficult or inconvenient for plaintiff to have taken the deposition of the proper officer of defendant to prove the facts. The most that can be said is that plaintiff did not have the necessary proof of the fact within her possession, which itself is rather indicative that the note was not paid, for if so it most likely would have been so stamped and delivered to the maker, which in this case was the insured. We

are, therefore, convinced that this record does not present a case requiring defendant who does not have the general burden to prove the essential negative fact entitling plaintiff, who does have it, to recover under the exception, *supra,* to the general rule.

But, it is insisted by plaintiff's counsel that the paper hereinbefore referred to of date March 15, 1907, purporting to show what would be due from plaintiff in payment of the fifth premium did not mention any outstanding note, but stated only the amount of cash that would be necessary to be paid in discharging all that premium; and that this fact was sufficient to raise the presumption that there was no such outstanding note. Perhaps that would be true if that paper was shown to have eminated from the defendant and was sent to the insured by it; or if plaintiff had shown that it was on a usual and customary blank used by the defendant for that purpose it might be presumed that it was so used in this instance and that it eminated from and was sent by the defendant. There is no such proof, however, in the case; so far as this record shows that paper may have been written by the insured or some one at his instance and request. At any rate, there is nothing to show or from which it could be presumed that defendant had any connection with it.

It is furthermore insisted that even if the note for $10.00 relied on in the answer was outstanding and unpaid, yet more than three-fourths of the fourth premium was paid at the time of the default and that plaintiff is entitled to three-fourths of the additional extension allowed for the payment of that premium. We do not so construe the terms of the policy, since it expressly says that no extension for the payment of any premium will be given, unless the entire premium is paid, as well as all notes executed therefor at the time of the default. While, therefore, the default in the payment of any premium, after the right to an extension has been acquired, will not destroy that right, additional extensions after the payments of subsequent premiums, followed by default, will not be given unless full payment is made according to the express language of the policy.

We are therefore of the opinion that the plaintiff failed to meet the requirements of the law in discharging the burden of proof which she assumed and which the law cast upon her, and the judgment is reversed with directions to grant a new trial and for proceedings consistent herewith.